IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

GEORGE H.,

                        Plaintiff,

            v.                              Civil Action No.
                                            8:23-CV-433 (DEP)

MARTIN J, O'MALLEY,
Commissioner of Social Security,[1]


                        Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

SCHNEIDER & PALCSIK            MARK SCHNEIDER, ESQ.
57 Court Street
Plattsburgh, NY 12901

FOR DEFENDANT

SOCIAL SECURITY ADMIN.        FERGUS KAISER, ESQ.
6401 Security Boulevard
Baltimore, MD 21235

_____

[1]      Plaintiff's complaint named Kilolo Kijakazi, in her official capacity as the Acting Commissioner of Social Security, as the defendant. On December 20, 2023, Martin J. O'Malley took office as the Commissioner of Social Security. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. See 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[2] Oral argument was conducted in connection with those motions on August 14, 2024, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by

---

[2]     This action is timely, and the Commissioner does not argue otherwise.   It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18.   Under those provisions, the court considers the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

reference, it is hereby

ORDERED, as follows:

1)      Plaintiff's motion for judgment on the pleadings is GRANTED.

2)      The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3)      The matter is hereby REMANDED to the Commissioner, with a directed finding of disability and for the purpose of calculating benefits owing to the plaintiff.

4)      The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:      August 22, 2024
            Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
GEORGE H.,

                           Plaintiff,

-v-                        8:23-CV-433

KILOLO KIJAKAZI, COMMISSIONER OF
SOCIAL SECURITY,


                           Defendant.
------------------------------------------------------x

**DECISION TRANSCRIPT**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
August 14, 2024
100 South Clinton Street, Syracuse, NY 13261


For the Plaintiff:

    SCHNEIDER & PALCSIK
    57 Court Street
    Plattsburgh, New York 12901
    BY:  **MARK A. SCHNEIDER, ESQ.**

For the Defendant:

    SOCIAL SECURITY ADMINISTRATION
    26 Federal Plaza
    Room 3904
    New York, New York 10278
    BY:  **FERGUS J. KAISER, ESQ.**




*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1              (The Court and all parties present by telephone.

2    Time noted:  11:16 a.m.)

3              THE COURT:  All right.  Let me begin by thanking

4    counsel for their presentations.

5              I have before me a challenge to an adverse

6    determination by the Commissioner of Social Security.  It is

7    brought pursuant to 42, United States Code, Section 405(g).

8              At the outset of argument, we confirmed that

9    plaintiff's counsel consents on behalf of his client to my

10   hearing and deciding this case.

11             The background is as follows:  Plaintiff was born in

12   August of 1968 and is currently 55 years of age.  He was

13   51 years old at the alleged onset of disability on October 1,

14   2019.  He stands approximately 5'8" in height and weighs roughly

15   120 pounds.  Plaintiff is married and lives with his wife in

16   Schuyler Falls in a two-story home.  Each of he and his spouse

17   have an adult child.  Plaintiff drives.  Plaintiff has a 12th

18   grade high school education and attended briefly a community

19   college.  While in school, he was in regular classes.

20             Physically, plaintiff suffers from chronic

21   obstructive pulmonary disease or COPD, emphysema, lumbar and

22   cervical degenerative disc disease, hypertension, and left

23   shoulder pain.  He was on Oxycodone, but now addresses his pain

24   with just Tylenol.  He does not use any assistive devices.

25             Mentally, plaintiff suffers from depression, anxiety,

1  an adjustment disorder, and posttraumatic stress disorder.

2  However, he has not been psychiatrically hospitalized and has

3  not had any specialized mental health treatment.  He does

4  testify to suffering and experiencing anxiety around crowds.

5            Plaintiff worked until October 1, 2019.  According to

6  the record, he lost his position when his employer moved out of

7  state.  That's at page 622 of the Administrative Transcript.

8  While working, he was a laborer and worked in a warehouse in

9  distribution and shipping, as well as a manager and supervisor.

10  He also worked for two weeks in 2019 as a dairy stocker.

11            Plaintiff's activities of daily living include some

12  cooking.  He can shower.  He can dress.  He walks and feeds his

13  dogs.  He watches television and listens to the radio.  He mows

14  his lawn when able using a ride-on lawnmower.  He does some

15  shopping.  He watches video games.  He used to hunt and fish,

16  but he stated he's going to try to focus on fishing and not

17  hunting.

18            Plaintiff has smoked off and on.  He currently smokes

19  three to six cigarettes a day.  He quit apparently in October of

20  2020, that's at 411, but restarted in April of 2021, that's at

21  page 489, and currently, as I said, smokes three to six

22  cigarettes a day, that's at page 601 of the Administrative

23  Transcript.

24            Procedurally, plaintiff applied for Title II benefits

25  on April 19, 2021.  He made a prior application for benefits on

1    April 17, 2020.  That was denied after a hearing before

2    Administrative Law Judge Mary Sparks.  The Social Security

3    Administration Appeals Council denied review on March 22, 2021.

4    In this case, he alleged an onset date of October 1, 2019, and

5    at 312 of the Administrative Transcript claimed disability based

6    on lower back pain, neck pain, bulging discs in his lower back,

7    depression, high blood pressure, COPD, and lung disease.

8           A hearing was conducted on March 17, 2022, with a

9    vocational expert by Administrative Law Judge Asad Ba-Yunus.

10   That Administrative Law Judge issued an unfavorable decision on

11   April 4, 2022.  That became a final determination of the agency

12   on March 23, 2023, when the Social Security Administration

13   Appeals Council denied plaintiff's application for review.  This

14   action was commenced on April 6, 2023, and is timely.

15          In the decision, Administrative Law Judge Ba-Yunus

16   applied the familiar five step sequential test for determining

17   disability, first noting that plaintiff's last insured status

18   date was March 31, 2024.

19          At step one, the Administrative Law Judge concluded

20   that plaintiff had not engaged in substantial gainful activity

21   since the alleged onset date, viewing the short-term employment

22   at Wal-Mart as an unsuccessful work attempt in 2019.

23          At step two, the Administrative Law Judge concluded

24   that plaintiff does suffer from impairments that impose more

25   than minimal limitations on his ability to perform work

1    functions, including cervical and lumbar degenerative disc

2    disease and COPD.

3              At step three, the Administrative Law Judge concluded

4    that plaintiff's conditions do not meet or equal any of the

5    listed presumptively disabling conditions set forth in the

6    Commissioner's regulations.

7              The Administrative Law Judge then went on to conclude

8    that despite his impairments, plaintiff retains the residual

9    functional capacity or RFC to perform light work, except that

10   the claimant can no more than occasionally climb ladders, ropes,

11   scaffolds, ramps, stairs, balance, stoop, crouch, kneel, crawl,

12   and would need to avoid all exposure to irritants such as fumes,

13   odors, dust, gases, and poorly ventilated areas.

14             Proceeding to step four, the Administrative Law Judge

15   concluded that notwithstanding his limitations, plaintiff is

16   capable of performing his past relevant work, which was

17   characterized as a shipping manager as it was actually performed

18   even though under the Dictionary of Occupational Titles as

19   regularly performed in the national economy it is characterized

20   as medium.

21             Alternatively, at step five, the Administrative Law

22   Judge concluded with the benefit of testimony from a vocational

23   expert that notwithstanding his limitations, plaintiff could

24   perform available work in the national economy citing as

25   representative positions those of cashier, package sorter, and

1  mail clerk and, thus, concluded that plaintiff was not disabled

2  at the relevant times.

3          As the parties know, the Court's function is

4  extremely limited in this case to determining whether correct

5  legal principles were applied and the resulting determination is

6  supported by substantial evidence, which is defined as such

7  relevant evidence as a reasonable person would find sufficient

8  to support a conclusion.  The Second Circuit has noted on

9  multiple occasions, most prominently in *Brault v. Social*

10 *Security Administration Commissioner,* 683 F.3d 443 from 2012,

11 that this is an extremely deferential standard, more stringent

12 than the clear and convincing standard that the lawyers are

13 familiar with.  That standard was reiterated more recently in

14 *Schillo v. Kijakazi*, 31 F.4th 64, from the Second Circuit, April

15 of 2022.

16         The plaintiff's contentions in this case are

17 multiple.  As is typical, Attorney Schneider has covered the

18 waterfront and raised very interesting issues.  He alleges

19 errors in the evaluation of medical opinions, he challenges the

20 step five determination, and points out that if plaintiff was

21 restricted to sedentary work, a finding of disability would be

22 directed by the Medical-Vocational Guidelines or Grids.  He

23 claims error in the Administrative Law Judge's evaluation of

24 plaintiff's subjective reports of symptomology and he argues

25 that the step two determination should have included both mental

1  impairments and atherosclerosis, which I understand, though I

2  can't pronounce it, that it is the narrowing or hardening of

3  arteries.

4          The first argument is the step two argument -- and by

5  the way, the plaintiff's counsel has raised the prospect that

6  this Administrative Law Judge has been reversed on a number of

7  occasions.  I take cases as I see them case-by-case and I don't

8  draw any adverse conclusions by that fact.

9          In terms of step two, obviously, a claimant must show

10  that he or she has a medically determinable impairment that

11  rises to the level of a severe impairment.  An impairment fails

12  to reach the threshold of severity where it does not

13  significantly limit the claimant's physical or mental ability to

14  do basic work activities.  It's well established that the step

15  two requirement is de minimus, intended only to screen out the

16  truly weakest of cases, but it is also well accepted that the

17  mere presence of a disease or impairment, or establishing that a

18  person has been diagnosed or treated for a disease in and of

19  itself is not sufficient to render a condition severe.

20          In this case, there was a claim that a mental

21  limitation should have been included and found severe at step

22  two.  The Administrative Law Judge did discuss plaintiff's

23  mental health conditions at pages 16 to 17.  I do know that

24  there was a typographical error on page 17 when the

25  Administrative Law Judge cited Exhibit B3F.  I think it should

1    have been B3E.  But he applied the special psychiatric

2    technique, found no limitations in any of the four functional

3    areas covered by the so-called B criteria, explained the

4    reasoning, which included plaintiff's activities of daily

5    living, no psychiatric hospitalization, no mental health

6    treatment, often denied any psychiatric symptoms to treatment

7    providers, often demonstrated normal mood and affect.  He

8    reviewed the findings of the consultative examiner, Dr. Brett

9    Hartman, which the opinion from Dr. Hartman was properly

10   rejected in part at page 22 of the Administrative Law Judge's

11   decision.  I don't find any error in failing to include a mental

12   health condition as severe at step two.  And, of course, cases

13   are well uniform in saying that there's harmless error if there

14   is a failure to include a condition at step two if the

15   sequential evaluation proceeds to step three and all

16   impairments, severe and nonsevere, are included and considered

17   in formulating the RFC.

18           In terms of the atherosclerosis, which, again, I

19   cannot pronounce, I note that plaintiff did not claim this as a

20   basis for disability.  That's at 312.  The plaintiff cites

21   X-rays showing a modest condition, but critical is whether there

22   are any resulting limitations.  It is plaintiff's burden through

23   step four, obviously, to establish limitations stemming from any

24   claimed medically determinable impairment.  I reviewed carefully

25   both the hearing testimony and the record and didn't find the

1    presentation of any evidence showing a limitation stemming from

2    this particular condition, so I find no error in that regard.

3              Turning next to formulation of the RFC and evaluation

4    of medical opinions.  Obviously, pivotal to a determination of

5    disability is a claimant's RFC, which represents a finding of

6    the range of tasks the claimant is capable of performing

7    notwithstanding his or her impairments, and that means a

8    claimant's maximum ability to perform sustained work activities

9    in an ordinary setting on a regular and continuing basis,

10   meaning eight hours a day for five days a week or an equivalent

11   schedule.  An RFC is informed by consideration of claimant's

12   physical and mental abilities, symptomology, and other

13   limitations that could interfere with work activities on a

14   regular and continuing basis, as well as all relevant medical

15   and other evidence.

16             In this case, I read into the record the residual

17   functional capacity finding of the Administrative Law Judge,

18   which includes, among other things, light work.  Light work is

19   defined under 20 C.F.R. Section 404.1567(b), as well as Social

20   Security Ruling 83-10.  Significantly, in this case, light work

21   requires intermittently standing or walking for a total of

22   approximately six hours of an eight-hour workday.

23             The medical opinions in this record include four --

24   for the evaluation of medical opinions since March 27th -- well,

25   cases filed after March 27, 2017, I should say, are subject to

1   amended regulations under which the Commissioner no longer

2   defers or gives any specific evidentiary weight, including

3   controlling weight, to any medical opinions, but, rather, must

4   consider whether those opinions are persuasive by primarily

5   considering whether the opinions are supported by and consistent

6   with the record in the case, 20 C.F.R. Section 404.1520(c).

7              There are two prior administrative medical findings

8   which qualifies medical opinions in the record.  The first is

9   from Dr. -- that addressed plaintiff's physical condition, I

10  should say.  First is from Dr. Seok from July 12, 2021.  It

11  appears at 92 through 112 of the record.  Significantly, Dr.

12  Seok opines that plaintiff can stand and/or walk for only two

13  hours in an eight-hour workday, that's in 101, and can only lift

14  and carry ten pounds occasionally, but less than ten pounds

15  frequently, and cannot perform plaintiff's past relevant work.

16  That's at 110 of the Administrative Transcript.

17             The second is from Dr. R. Mohanty from November 4,

18  2021.  It appears at 114 to 136.  It echoes Dr. Seok's findings,

19  including standing, walking, lifting, and performance of past

20  relevant work.

21             The third opinion is from consultative examiner

22  Dr. Susan Dantoni.  It is dated June 30, 2021.  It appears at

23  580 to 585 of the Administrative Transcript.  In the medical

24  source statement, it indicates that plaintiff has marked

25  limitations for prolonged standing and walking, among other

1    things.

2         The substance of the report also indicates the

3    following:  With regard to general appearance, gait, and

4    station, the claimant appeared to be in a lot of pain.  He walks

5    with a somewhat antalgic gait.  He appears to be in pain as he

6    walks.  He cannot walk on heels and toes, squat ten percent,

7    stands normal, use no assistive devices, needed no help changing

8    for exam, I did have to help him on and off the exam table, he

9    had some difficulty rising from the chair.

10        In terms of the musculoskeletal exam, there was a

11   limited range of motion in the neck, severe pain when he tried

12   to move it, he had a lot of pain in his back during this part of

13   the exam, positive straight leg rise at 70 degrees confirmed in

14   the seated position, decreased range of motion in the left

15   shoulder.

16        The Administrative Law Judge concluded that that was

17   not persuasive at page 21, finding that it was somewhat

18   inconsistent with clinical observations and testing.  The test

19   results, though, seem not to necessarily undercut it.  At page

20   607, the report of a lumbar spine X-ray showed L5 pars defects,

21   grade 2 anterolisthesis L5 on S1.  Degenerative changes, most

22   pronounced in the lower lumbar spine.  That's at page 607.

23        At page 608, the impression is interval development

24   of moderate degenerative disc disease at C6-7, as well as

25   degenerative facet joint disease at C5-6 and C6-7.  This relates

1    to X-ray of, obviously, the cervical spine.

2             At 610, there is also a report of an X-ray of the

3    lumbar spine, L5 pars defects.  Grade 2 anterolisthesis L5 on

4    S1.  Degenerative changes, most pronounced in the lower lumbar

5    spine.

6             And at 611, a similar observation to the earlier one

7    with regard to the cervical spine.

8             The last medical opinion in the record is from the

9    pulmonologist treating the plaintiff, Dr. Sadaf Mir from

10   June 29, 2021.  That's at 590 to 593.  The opinion of Dr. Mir is

11   that plaintiff cannot meet the lift requirements of light work.

12   He does not offer an opinion as to whether plaintiff can stand

13   and/or walk six hours in an eight-hour workday, deferring to the

14   primary provider.

15            The Administrative Law Judge used plaintiff's

16   activities of daily living, among other things, to undercut

17   these uniform medical opinions, shopping one hour per week

18   weekly, one hour weekly at a time, no explanation of how the ALJ

19   concluded plaintiff can meet the requirements of standing and

20   walking and lifting and carrying of light work.

21            I think that the Administrative Law Judge played

22   doctor and reviewed clinical evidence and came to his own

23   conclusion, which is inconsistent with four uniform opinions of

24   record by medical professionals.

25            I find that there was error in concluding that

1  plaintiff can perform the requirements of light work.  The

2  question is, is it harmless or harmful.  As plaintiff argues,

3  and as I think the Commissioner's counsel conceded, if plaintiff

4  was capable only of performing sedentary work, a finding of

5  disabled would be compelled by Grid Rules 201.12 and 201.14

6  since he is approaching the advanced age category and was at the

7  onset.

8          The shipping manager supervisor position is skilled,

9  the warehouse manager position is skilled, the vocational expert

10 when presented with a sedentary hypothetical stated that

11 plaintiff is not capable of performing his past relevant work

12 and does not possess any transferable skills, so the step four

13 and step five findings, in my view, are infected by the error in

14 formulating the residual functional capacity.  I agree with

15 plaintiff's counsel that the evidence in this case is persuasive

16 on the question of disability and no useful purpose would be

17 served in returning this case for further review.

18         So I will grant plaintiff's motion for a judgment on

19 the pleadings, vacating the Commissioner's determination, and

20 remanding the matter to the Commissioner solely for the purpose

21 of calculation of benefits, and with a directed finding of

22 disability.

23         Thank you, both, for your excellent presentations and

24 I hope you enjoy the rest of your summer.

25         MR. KAISER:  Thank you, your Honor.

1              THE COURTROOM DEPUTY:  Court is adjourned.

2              (Time noted:  11:41 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2
 3
 4                    CERTIFICATE OF OFFICIAL REPORTER
 5
 6
 7              I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 8   NYRCR, Official U.S. Court Reporter, in and for the United
 9   States District Court for the Northern District of New York, DO
10   HEREBY CERTIFY that pursuant to Section 753, Title 28, United
11   States Code, that the foregoing is a true and correct transcript
12   of the stenographically reported proceedings held in the
13   above-entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
15   the United States.
16
17              Dated this 19th day of August, 2024.
18
19              s/ Hannah F. Cavanaugh_____
20              HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
21              Official U.S. Court Reporter
22
23
24
25
```